FILED
JUN 11 2012

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| LULU YEAGER, by and through her next friend and Power of Attorney, WALTER YEAGER, | ) ) ) | File No. Civ. 12-5037 |
| Plaintiffs, | ) ) | |
| | ) | COMPLAINT |
| v. | ) ) | |
| BANKERS LIFE AND CASUALTY INSURANCE CO., | ) ) | |
| Defendant. | ) | |

COMES NOW the Plaintiff, by and through their attorney Mike Abourezk, and for her complaint states as follows:

### PRELIMINARY STATEMENT

1. Plaintiff is a resident of Rapid City, South Dakota.

2. The Defendant is a corporate entity with its place of incorporation and business offices located outside the state of South Dakota.

3. The amount in controversy exceeds $75,000.

4. Jurisdiction of this matter is based on 28 USC 1332, Diversity of Citizenship.

### NATURE OF THE CASE

5. On October 24, 2001, Lulu Yeager purchased a policy of long term care insurance from Defendant, and Defendant issued the policy affective November 1, 2001.

6. The policy promises to pay a daily benefit amount for expenses related to necessary long term care.

7. To qualify for benefits, a licensed healthcare practitioner must certify that the

policyholder needs qualified long term care services because the policyholder is chronically ill.

8. The term "chronically ill" means that the policyholder has been certified by a licensed healthcare practitioner as (1) being functionally incapacitated for a period expected to last at least 90 days; or (2) having a cognitive impairment.

9. The term "cognitive impairment" is defined as "a deterioration or loss in intellectual capacity which requires substantial supervision to protect oneself from threats to health and safety. Cognitive impairment is measured by clinical evidence and standardized tests that reliably measure impairment in ones: (1) short or long term memory; (2) orientation as to people, places, or time; and (3) deductive or abstract reasoning. Such loss of intellectual capacity can result from the following covered conditions: Alzheimers disease, Parkinsons disease, senile dementia or other nervous or mental disorders of organic origin."

10. "Substantial supervision" is defined as "continual supervision (which may including cuing by verbal prompting, gestures, or other demonstrations) by another person that is necessary to protect a cognitively impaired person from threats to his or her own health or safety."

11. On May 25, 2008, Lulu Yeager entered supervised care at Somerset Court Assisted Living, in Rapid City, South Dakota.

12. She did so as a result of her inability to continue living independently, and because of poor medication compliance, poor nutrition, poor short term memory, and associated problems.

13. Her own licensed healthcare practitioner, Dr. Bowman, certified that she suffered from cognitive decline which requires substantial supervision to protect her from threats to health

and safety as measured by clinical evidence and standardized testing in the areas of short term/long term memory, orientation as to people, place and time, and deductive and abstract reasoning or judgment as it relates to safety awareness.

14. Dr. Bowman issued physician's orders stating that Lulu Yeager was not to self administer medications.

15. Subsequently, Lulu Yeager began seeing Dr. Hata, a neurologist, to assist in determining the cause of her cognitive impairment. Dr. Hata diagnosed her with dementia, most likely Alzheimers type.

16. In an examination on April 27, 2009, Dr. Hata administered testing to Lulu Yeager which showed cognitive impairment in that she knew the day but not the date, knew that it was April, but didn't know what year it was, didn't know who the President was, couldn't identify any previous Presidents, couldn't recall three items named for her just minutes earlier, and couldn't remember any numbers named for her just minutes earlier.

17. On July 20, 2010, Dr. Hata assessed Lulu Yeager as having Alzheimers disease versus vascular dementia, and stated "the patient does have rather severe cognitive deficits."

18. On July 24, 2009, Dr. Mark Cook, a neuropsychologist, performed a neuropsychological battery of tests on Lulu Yeager.

19. The neuropsychological testing indicated impairments in memory and executive functioning, and assessed that she was suffering from possible vascular dementia or a frontal subcortical dementia.

20. At Somerset Court, Lulu Yeager receives continual medical supervision with her daily medications, meals and nutrition, and blood sugar testing related to her diabetic condition.

21. Lulu Yeager, with the assistance of her family, filed a claim with Bankers Life and Casualty Insurance Company for her insurance benefits.

22. Bankers Life and Casualty Insurance Company denied the claim.

23. With the help of her family, Lulu Yeager submitted additional information and requested reconsideration.

24. Bankers Life and Casualty Insurance Company again refused to pay.

25. Her family then obtained additional records and medical information, and submitted all of that information. Bankers denied the claim again.

26. Bankers Life and Casualty Insurance Company has no reasonable basis for denial, and has knowledge that it has no reasonable basis for denial.

27. Bankers Life and Casualty Insurance Company has also violated the duty to conduct a reasonable investigation of facts that would trigger coverage.

28. Bankers Life and Casualty Insurance Company is misinterpreting and misapplying policy provisions in order to deny benefits.

29. As a result of the improper denial of benefits, Bankers Life and Casualty Insurance Company has caused Lulu Yeager damages including the following:

  a. It has withheld money owing to Lulu Yeager over the past 4 years in an amount now exceeding $90,000.

  b. It has caused emotional upset and worry to Lulu Yeager and her power of attorney, Walter Yeager.

  c. Has continued to collect premiums in violation of the "waiver of premium" provision in its policy.

      d.      Has deprived Lulu Yeager of the use of her money over the previous 4 years and continues to do so.

30. Bankers Life and Casualty Insurance Company has acted with fraud, oppression, or malice, and punitive damages are necessary to stop Bankers Life and Casualty Insurance Company from this behavior and to deter it from continuing this behavior in the future.

31. Bankers Life and Casualty Insurance Company has engaged in a course of conduct that is part of a company policy which includes misinterpretation and misapplication of policy provisions, improper training of claim personnel, and improper denial of claims to elderly policyholders.

WHEREFORE, Plaintiff asks for judgment in an amount consistent with the proof at trial for compensatory damages and appropriate punitive damages, as well as her attorney fees, costs, interest on all amounts owing, and all other appropriate relief determined by the Court and provided by law.

**PLAINTIFFS DEMAND TRIAL BY JURY**

Dated this 8th day of June, 2012.

By: _____
Mike Abourezk
Attorneys for Plaintiff
Post Office Box 9460
2020 W. Omaha St.
Rapid City, South Dakota 57709
(605) 342-0097